UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN FITZGERALD,

Plaintiff,

v.

SUNCO CAPITAL, LLC, *d/b/a SUNCO Solar Solution*; ATTYX, LLC; ATTYX New York, LLC; ATTYX Utah, LLC; Regions Bank; ENIUM CAPITAL GROUP, LLC; and WILSHIRE COMMERCIAL CAPITAL, LLC, *d/b/a Wilshire Consumer Credit*,

Defendants.

**MEMORANDUM DECISION AND ORDER**

25-cv-3038 (BMC)

**COGAN**, District Judge.

About a year ago, the Court stayed this case pending arbitration on motion of the defendant Wilshire Commercial Capital, LLC ("Wilshire"). That arbitration never happened because Wilshire didn't pay its share of the arbitration fees. JAMS, Inc. ("JAMS") therefore closed the arbitration, after having warned Wilshire that it would do so if the fees remained unpaid. Once the arbitration was closed, plaintiff returned to the Court and moved to lift the stay, so that the matter may proceed as litigation. For the reasons below, the motion is granted.

## BACKGROUND

Defendant SUNCO Capital, LLC ("SUNCO"), now known as ATTYX, LLC ("ATTYX"), was in the business of making, selling, and installing solar panels.[1] Defendant Enium Capital Group, LLC, offered consumers loans for the purchase of the solar panels, which

[1] The principals of SUNCO/ATTYX created another home-improvement business, ATTYX New York LLC, all of which are being sued by New York for fraud, the general allegations of which track plaintiff's allegations here. See New York v. ATTYX, LLC, Ind. No. 451195/2026 (Richmond Cnty. Sup. Ct. Mar. 17, 2026).

were sometimes financed by Wilshire. After financing the purchase of solar panels based on allegedly false representations, plaintiff sued under the Truth in Lending Act and Magnuson-Moss Warranty Act. Wilshire is the only defendant that has appeared in this action.

Not long after plaintiff sued, Wilshire moved to compel arbitration based on an arbitration clause in the promissory note underlying the loan. The motion became moot because plaintiff agreed that the arbitration clause applied, and consented to arbitration. Thus, on October 22, 2025, the Court stayed this case.

On the same day that the Court stayed the case, plaintiff filed his arbitration demand with JAMS, paid his share of the fees, and served all the necessary documents on Wilshire. JAMS invoiced Wilshire for its share of the fees twice over the next six months, to no avail. On April 22, 2026, JAMS advised the parties that the arbitration cannot proceed without Wilshire paying its share of the fees.

On May 26, 2026, because Wilshire still had not paid the fees, plaintiff emailed JAMS (with Wilshire copied) asking to close the arbitration to permit plaintiff to return to this Court. On May 28, 2026, JAMS closed the arbitration. The very next day – May 29, 2026 – Wilshire tried to pay its portion of the fees by sending a check to JAMS. That payment was not processed because the arbitration had been closed.

Because JAMS closed the arbitration, plaintiff moved to reopen this case. The Court held a status conference to determine whether the matter should proceed here, or if another effort should be made with JAMS. From the Court's perspective, this largely turned on whether Wilshire, as the party which had invoked the arbitration clause in the first place, was to blame for the arbitration having failed. Clearly, it was. Wilshire offered no excuse for its failure to pay its portion of the arbitration fees until one day after JAMS closed the arbitration. Nonetheless,

Wilshire averred that it was ready, willing, and able to proceed before JAMS. Plaintiff preferred to proceed in litigation. Because the law "expresses a preference for enforcing arbitration clauses," Gingras v. Think Fin., Inc., 922 F.3d 112, 126 (2d Cir. 2019), the Court kept that possibility alive, but put the ball in Wilshire's hands:

> Wilshire shall attempt to persuade JAMS to reopen the arbitration . . . and, if unsuccessful, shall have "waive[d] the right to arbitrate," Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 455 (2d Cir. 1995), by failing to timely pay the required arbitration fee.

The parties then submitted competing briefs to JAMS as to whether the arbitration should proceed. JAMS has not been persuaded to reopen the arbitration. The latest correspondence from JAMS says that it "can reopen the arbitration if the parties agree to do so or upon receiving a court order."

Wilshire then returned to Court, complaining that JAMS did not "issue a reasoned [order] on the question of whether or not this arbitration file can be reopened," and asked the Court to instead resolve that question. But the issue was never about whether JAMS *can* reopen the arbitration; rather, whether it *will* do so at Wilshire's request, notwithstanding plaintiff's opposition. JAMS has answered that question with an unequivocal "no."

Thus, pursuant to the Court's prior Order, the stay should be lifted, and this case should proceed in litigation. However, "[s]ection 3 stays are mandatory, not discretionary," Duke v. Luxottica U.S. Holdings Corp., 167 F.4th 16, 32 (2d Cir. 2026), and the prior Order did not include the Court's rationale, stated below, for lifting the stay, should Wilshire be unsuccessful in persuading JAMS to reopen the arbitration.

**DISCUSSION**

A court may not lift a stay-pending-arbitration unless the "arbitration has been had in accordance with the terms of the agreement" or if "the applicant for the stay is [] in default in

proceeding with such arbitration." 9 U.S.C. § 3. An arbitration closed for failure to pay the fee has not "been had." See Shenzhen Xingchen Xuanyuan Indus. Co. v. Amazon.com Servs. LLC, 735 F. Supp. 3d 453, 464 (S.D.N.Y. 2024) (citation omitted). Thus, the question is whether Wilshire is "in default in proceeding with [the] arbitration." 9 U.S.C. § 3.

There is a dearth of law on what constitutes "default" under section 3, but the Second Circuit has "equated a waiver of the right to arbitrate with 'a default in proceeding with such arbitration[.]'" Doctor's Assocs., 66 F.3d at 455 (quoting Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 412 (2d Cir. 1959)). Thus, the operative question is whether Wilshire has waived the right to arbitrate.

A party may "knowingly relinquish the right to arbitrate by acting inconsistently with that right[.]" Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022). "In answering that question, [the Court] may consider all aspects of the [] party's conduct." Doyle v. UBS Fin. Servs., 144 F.4th 122, 129 (2d Cir. 2025) (finding waiver when the defendants moved to compel arbitration only after their motion to dismiss was denied).

There are two cases in which the Second Circuit agreed that a party did not waive the right to arbitrate by willfully failing to pay its share of arbitration fees. See Brown v. Peregrine Enters., Inc., No. 22-2959, 2023 WL 8800728, at *7 (2d Cir. Dec. 20, 2023); Billie v. Coverall N. Am. Inc., No. 22-718, 2023 WL 2531396, at *3 (2d Cir. Mar. 15, 2023). In both cases, the arbitration agreement at issue provided for equal distribution of the arbitration fees, whereas the American Arbitration Association ("AAA") rules required one side to pay more. The Second Circuit found a party's refusal to pay the higher fees was not "inconsistent" with the right to arbitrate because it was based on the party's contractual right to pay less than the AAA rules

demanded. In other words, the party's conduct still evinced an intent to enforce its right to arbitrate, notwithstanding the refusal to pay the fees.

Here, in contrast, Wilshire offers no excuse for its failure to timely pay the JAMS fees. Sending a payment for the fees the day after JAMS closed the arbitration, despite being on notice of the arbitration for more than six months, suggests gross negligence at best, and improper gamesmanship at worst. Plaintiff has tried to resolve the case in earnest, whether it be in arbitration or litigation; Wilshire has not.[2] Accordingly, by failing to pay the JAMS fee without a good faith basis for doing so, Wilshire waived its right to arbitrate.

**CONCLUSION**

The stay is lifted. Within 7 days of this Order, the parties shall file joint or competing proposals as to how the case should proceed.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
September 18, 2026

[2] JAMS's suggestion in its most recent correspondence, that it would comply with a court order to reopen the arbitration, does not change this result. First, the Court does not wish to tell JAMS, a nonparty, how to proceed under its own rules, or render an advisory opinion to a non-party what it should do under those rules. And even if it was inclined to do so, the Court would first require some showing that JAMS had acted contrary to its rules or otherwise inequitably, which is not the case here.